RED BALL MOTOR FREIGHT, Inc. v.
SOUTHERN PACIFIC TRANSPORT
CO. et al.
No. 9884.

Court of Civil Appeals of Texas. Austin.
May 31, 1950.

Rehearing Denied June 21, 1950.

Rawlings, Sayers & Scurlock, of Fort Worth, for appellant.

Price Daniel, Atty. Gen. of Texas, and Charles E. Crenshaw, Asst. Atty. Gen., for Railroad Commission of Texas.

Tom M. Davis, Joe G. Fender, A. Ben White, all of Houston, and Charles N. Avery, Jr. and John J. McKay, both of Austin, for appellee Southern Pac. Transport Co.

GRAY, Justice.

Appellant, Red Ball Motor Freight, Inc., filed this suit seeking to set aside an order of the Railroad Commission granting Southern Pacific Transport Company a certificate of public convenience and necessity to operate a common carrier motor carrier service between Shepherd, Texas, and the Texas-Louisiana State Line via Shepherd, Urbana, Goodrich, Livingston, New Willard, Leggett, Moscow, Corrigan, Diboll, Burke, Lufkin, Nacogdoches, Applyby, Garrison, Timpson, Tenaha, Paxton, Joaquin and Haslam, serving all of these points. Such service to be coordinated with the service of Southern Pacific Rail Lines which serves all of said points. The designated route is parallel to a line of railroad operated by the Texas and New Orleans Railroad (hereinafter designated as T. & N. O.), the stock of which is owned by the Southern Pacific Company with the exception of a very small fractional part thereof.

After the suit was filed, H. E. English, a party to the hearing before the Commission and president and principal stockholder of Red Ball, filed a plea of intervention wherein he alleged he was a stockholder in Southern Pacific Company and that the stock of T. & N. O. and of the Transport Company is owned by Southern Pacific Company. The plea sought to cancel the order of the Commission and to enjoin the Transport Company from performing any character of transport service by motor vehicle over the route designated because the order violates Section 5 of Article 10 of the Texas Constitution, Vernon's Ann. St.

A non-jury trial resulted in a judgment sustaining the certificate and denying any relief to intervenor.

Red Ball and H. E. English have appealed and here present a single brief by the same attorneys; and by their first point complain that the order of the Commission is void because the Commission did not make findings of the existence of conditions at the time it acted as follows: (1) the existing transportation facilities, (2) the demand or need of additional service, (3) whether there exists a public necessity for such service, (4) probable permanence and quality of service offered, (5) the Transport Company's organization and personnel, (6) character of depots or termini to be used, (7) the experience of the Transport Company, and (8) the character of the bond or insurance proposed to be given to insure protection to the public.

Appellants say in their brief that the "substantial evidence" rule is not involved, and we will not discuss the evidence except only as it may be necessary.

The order of the Commission sets out the testimony of public witnesses, receivers and shippers of freight, and recites it considered all exhibits, testimony, and its own records. The order finds that appellee Transport Company already serves Shepherd out of Houston by truck; that Red Ball operates over the proposed route, serving all points above named and on into Louisiana, and is the only motor freight line serving Nacogdoches; that Southern Pacific Rail Lines serves all these points, and that the proposed service is to be coordinated with the rail service; that delivery and other features to Lufkin and

Nacogdoches can be improved by the use of trucks; that the proposed service is a needed service; that there is a demand and need for additional service; that existing service is inadequate; that there exists a public necessity for the proposed service, and that the public convenience will be promoted by granting the application. That satisfactory proof was made of the financial responsibility of the applicant; that the equipment proposed to be used meets the requirements of the law as to safety devices, dimensions, etc., and that the highways designated in the application are of such type of construction and maintenance and are subject to such use as to permit the use sought without unreasonable interference with the use of such highways by the general public. By an exhibit attached to the application before the Commission, it was shown that the stations, warehouses, agents and telephones of T. & N. O. along the proposed route are available to the Transport Company. This exhibit also shows substantially the assets and liabilities of the Transport Company, and all carriers and transportation companies serving the points along the route. The record shows that the Transport Company is now operating 2,130 miles of common carrier motor carrier service over the highways of the State, under permits issued by the Commission, using 82 power units and 66 trailers.

By Rule 58 of the Commission, the Transport Company is given fifteen days from the date on which the order granting it a permit becomes final in which to file proper insurance.

From the foregoing statement we think the requirement as to findings to be made by the Commission by Article 911b, Vernon's Ann.Civ.St. are met by the order. Except as to insurance, which is provided for in Rule 58, any required finding, if not specifically made, we think is impliedly made from the evidence set out in the order. Under the law, "the Commission must of necessity ascertain facts and make fact findings. Of course, such fact findings may be made either expressly or by implication * * *. In so far as the fact findings upon which the order is based

are concerned, the order is not illegal, unreasonable, or arbitrary if it is reasonably supported by substantial evidence." Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 at pages 428 and 429; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73.

By appellants' point two they complain that the trial court erred in not holding the order void as exceeding the authority sought by the application.

■ The application for the permit proposed to serve each city, town and community along the designated route over U. S. Highways 59 and 84, and, also, "over undesignated lateral roads for distances not exceeding three miles from U. S. Highway 59 to serve the towns of New Willard, Moscow and Appleby, Texas, * * *. The operations and service are proposed as an extension of all operations and service of the applicant under its existing certificates of public convenience and necessity, to be coordinated with the services and operation of the Texas and New Orleans Railroad Company."

From a consideration of "the evidence, the law, and its own records, rules and regulations," the Commission determined the permit should be granted, and, by its order, authorized the transportation of commodities generally over the proposed route. The order designated the route and the points to be serviced identically with the application, and provided: "The service to be coordinated with the rail operations and service of the applicants affiliate, the Texas and New Orleans Railroad Company, also, to be an extension of all operations and service of the applicant under its existing certificate * * *."

Appellants say that while the order does provide that the service is to be coordinated with the rail operations and service of the T. & N. O., "it nowhere imposes conditions which would assure such a result perforce the strength of the order. As a result of the failure to impose such conditions or restrictions Southern Pacific Transport Company is authorized to and is actually rendering a service which is a wholly independent motor carrier service without

regard to it being supplement of, auxiliary to, or coordinated with the rail service."

In support of this point, appellants rely on the testimony of the Transport Company's vice-president and general manager. We think an examination of the testimony of this witness shows that he explains the coordinated service to be that the freight may move over the route in part by rail and in part by truck, that is, it may be moved by rail to a distribution point and then by truck to its destination for delivery, or it may be picked up by truck, brought to concentration points, and then made available for further movement by rail or by truck according to the nature of the freight, its pick up and delivery under the best service available by using all facilities of the T. & N. O. and the Transport Company.

We think the coordinated service provided for in the order is a uniting of the separate facilities of the two carriers therein mentioned to provide an adequate service for the movement of freight from shipper to receiver in such manner as to meet a public need and demand, and to promote the public welfare

The mere fact that freight might or could be moved by truck and freight charged at rail rates, or vice versa, is not of such force as to here justify striking down the order. If the order is or should be violated, then Section 12(b) of Article 911b and Rule 59 of the Commission afford a remedy for such violation.

Appellants' third point complains that the trial court erred in not holding the Commission committed fundamental error in applying its general order 55. Such order provides that all common carrier motor carriers transporting property for hire under authority of the Commission, shall forthwith file their schedules. And further provides that in all proceedings before the Commission, its examiners or representatives, evidence of schedules will not be received or admitted in evidence or given any consideration by the Commission unless such schedules shall have been previously filed with the Commission.

The application was filed July 30, 1947, and was set for hearing September 15, 1947. The hearing began on September 15, and proceeded until September 19, at which time it was continued on the request of appellants. The hearing was resumed on November 10, 1947.

Admittedly, after hearing the witnesses and viewing the exhibits at the September hearing, Red Ball began rendering different or additional service to that rendered by it in September. Evidence of the service rendered under the new schedules and the new schedules were offered at the November hearing. This evidence was received by the examiner who noted that it was his opinion that it violated general order 55. The order of the Commission granting the permit recites: "The Commission, in reviewing this case, has considered the testimony of all of the witnesses introduced by the protestants, and has considered all of the exhibits, including the schedules, which were inaugurated after the hearing had begun. East Texas Motor Freight Lines offered an exhibit No. 3, together with freight bills, Exhibit No. 3 being an abstract of delivery receipts on shipments delivered by that line to firms from Houston, Dallas and Beaumont for the year 1947, through September 30th. This Exhibit was not received by the Examiner as a part of the record, but it was identified at the hearing and has been presented to the Commission, and the Commission has taken into consideration this Exhibit together with all other exhibits and testimony."

We fail to see how appellants could in any event have been harmed by general order 55. They offered the evidence, it was received and was considered by the Commission, and the Commission then made the findings supra.

Appellants' final point complains that the trial court erred in not sustaining the plea of intervention of H. E. English.

It was stipulated at the trial that the Transport Company is a Texas corporation with T. W. Waldrop as its vice-president and general manager; that it is a

wholly owned subsidiary of the Southern Pacific Company, and through common ownership of stock by that company is affiliated in its operation with T. & N. O. The record shows that T. W. Waldrop is also employed by T. & N. O. as its "General Agent, Merchandise Traffic."

Intervenor, the president and principal stockholder of Red Ball, had "knowledge" of the hearing before the Commission on August 15, 1947, the date notices were issued. He and Red Ball appeared at the hearing, were there and are here represented by the same attorneys. "A few days" prior to August 25, 1947, intervenor instructed Mr. Carroll, treasurer of Red Ball, to purchase for him two shares of stock in Southern Pacific Company; Mr. Carroll then contacted one of the attorneys for intervenor and Red Ball, who thereafter advised Carroll the stock could be purchased through a firm of Fort Worth brokers, and the stock was purchased for intervenor for the sum of $91.42.

Conceding, without deciding, that intervenor is a holder in good faith of said shares of stock, we think the action of the trial court denying relief to intervenor was proper. "The general rule is that the question of whether or not a corporation has acted in excess of its lawful powers can only be raised by one interested in the corporation, or in a direct proceeding brought by the state, either to forfeit the charter or to subject it to punishment for the unlawful act." Staacke v. Routledge, 111 Tex. 489, 241 S.W. 994, 999.

The only question before the trial court was the validity of the order of the Commission in granting the permit, and since the Commission could not judicially determine the question urged by intervenor, it is not to be determined on appeal. English v. Landa Motor Lines, Tex.Civ. App., 166 S.W.2d 721. By analogy, the same principle is announced to be the law by the Supreme Court in Trapp v. Shell Oil Co., supra: "The duties of the Railroad Commission as given by law do not encompass the power or authority of deciding the ownership of the title to land. We think it follows that the appeal contem-

plated by Section 8 of Article 6049c does not include such power, even though the appeal is to a district court of Travis County which, in a proper case, has such jurisdiction."

We see no reason why Section 20 of Article 911b should not, in effect, be given the same meaning as Section 8 of Article 6049c, as was done by this court in English v. Landa Motor Lines, supra.

The judgment of the trial court is affirmed.

Affirmed.